```
1    D8E0REYP                   Plea

2    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
3    ------------------------------x

4    UNITED STATES OF AMERICA,

5              v.                            13 CR 51

6    ARCADIO REYES-ARIAS,

7                   Defendant.

8    ------------------------------x

9                                            New York, N.Y.
                                             August 14, 2013
10                                           10:11 A.M.

11


12
     Before:
13
                      HON. PAUL G. GARDEPHE,
14
                                             District Judge
15

16                          APPEARANCES

17   PREET BHARARA
          United States Attorney for the
18        Southern District of New York
     EDWARD DISKANT
19   Assistant United States Attorney

20   MARGARET SHALLEY
     Attorney for Defendant
21

22   Spanish Language Interpreter:  Paula Gold

23

24

25
```

(212) 805-0300

```
 1                 (In open court; defendant present)
 2             THE COURT:  Please be seated.
 3             THE DEPUTY CLERK:  Call the case of United States v.
 4    Arcadio Reyes-Arias.
 5             Is the government ready?
 6             MR. DISKANT:  Good morning, your Honor.  Edward
 7    Diskant, for the government.
 8             THE DEPUTY CLERK:  For defendant?
 9             MS. SHALLEY:  Margaret Shalley for Arcadio
10    Reyes-Arias.
11             THE COURT:  We were last together July 31, 013, at
12    which time I accepted the defendant's guilty plea to
13    counts one, two and four of the superseding information.
14             I refused to accept defendant's plea as to count three
15    to the charge of bank fraud, because of concerns that the
16    defendant's allocution was insufficient under United States v.
17    Nkansah, 699 F.3d 743 (2d.Cir.2012).
18             In Nkansah, the Second Circuit held that "convictions
19    for bank fraud are limited to situations where the defendant
20    (1) engaged in a course of conduct designed to deceive a
21    federally chartered or insured financial institution into
22    releasing property; and (2) possessed an intent to victimize
23    the institution by exposing it to actual or potential loss."
24    Nkansah 699 F.3d at 748, quoting United States v. Barrett, 178
25    F.3d 643, 647- 48 (2d Cir. 1999).
```

1     In Nkansah, the Court states in the context of a bank
2 fraud charge, "the government has to prove beyond a reasonable
3 doubt that appellant intended to expose the bank to the
4 losses." Id.
5     In his allocution the defendant stated that he
6 want to buy a house in which he used to live.  The owner of the
7 house was willing to sell the house to the defendant, but he
8 did not have enough money to buy it.
9     The owner agreed to deposit 33,000 in the defendant's
10 bank account.  It could be used as a down payment on the home.
11 The defendant agreed to give the $33,000 back to the owner
12 after the sale of the house went through, citing plea
13 transcript 28-31.
14     The defendant went to Wachovia for the purposes of
15 obtaining a loan to purchase the property.  He completed a loan
16 application, but did not disclose that the $33,000 in his bank
17 account had come from the seller, and was not his money, and
18 had to be returned to the seller after the transaction went
19 through, plea transcript 28-29.
20     After eliciting this information from the defendant, I
21 asked him whether he intended to expose Wachovia to a risk of
22 loss.  The defendant stated that he had no such intent.  Citing
23 plea transcript 29.
24     I then asked the defendant whether he understood that
25 the bank would not have given him the loan if it understood

1     that the $33,000 down payment had been provided by the seller,
2     because it would have concluded that he couldn't afford to
3     purchase the house.  The defendant agreed.  Transcript.  Plea
4     transcript 32.
5              I then asked whether the defendant understood that,
6     given that he didn't have the down payment to purchase the
7     house absent the seller's money, there was a chance that the
8     bank would not get paid back.  The defendant said that he did
9     not believe at the time that there was any risk that the bank
10    would not be paid back.  Plea transcript 31-33.
11             I then stated that I would not accept the plea,
12    because it appeared that the defendant was saying that he never
13    had any intent to harm Wachovia, and never believed that he was
14    exposing it to a risk of loss.  I invited further briefing on
15    the subject from counsel.
16             I received a letter from the government later that
17    day.  In that letter, Mr. Diskant said that despite the very
18    broad language in Nkansah stating that the government must
19    prove that a defendant intended to expose the bank to losses,
20    such an intent maybe inferred, at least with respect to loans
21    from banks where there is proof that the defendant submitted
22    false information on a bank loan application.
23             In Nkansah, the appellant was part of a group that
24    filed fraudulent tax returns based on stolen names, dates of
25    birth and Social Security numbers.  All of the tax returns

1    called for a tax refund.
2            The defendant deposited the tax refund checks into
3    bank accounts and later withdrew the money.  699 F.3d at 746.
4            On appeal, Nkansah argued that the government was
5    required to prove that he intended to victimize the banks, as
6    opposed to the U.S. Treasury.  It would seem that any time
7    someone deposits a fraudulently-obtained check into a bank
8    account, and obtains the proceeds, that the bank faces some
9    risk of harm.
10           In reversing the defendant's bank fraud
11   conviction, the Court suggested, however, that the bank might
12   have been a holder in due course, and further pointed out that
13   the government had offered no evidence that the bank actually
14   had suffered a loss.  Id.  At 750-51.
15           The government points out here, correctly, that the
16   Court in Nkansah also stated that "where the direct legal
17   exposure to loss is sufficiently well-known, a jury may infer
18   that the defendant intended to expose the bank to losses."
19   Id at 750.
20           Moreover, the Court stated in a footnote that its
21   decision "leaves untouched the [bank fraud] statute's
22   protection of banks from fraudulent practices in the security
23   of loans." Id at 749.  Note 2.
24           I read this footnote as stating that Nkansah has no
25   application in the context of a bank fraud case involving a

1       fraudulent bank loan application.  That reading is confirmed by
2       subsequent decisions in the bank fraud area.
3              For example, after Nkansah, the Second Circuit has
4       stated that "evidence beyond a reasonable doubt that defendants
5       fraudulently evaded a known down payment requirement is
6       sufficient to support a bank fraud conviction."  United States
7       v. Norris, 513 Federal Appendix, 57, 2013 Westlaw 781038 at *1
8       (2d Cir.2013), quoting United States v. Brandon 17 F.3d 409 at
9       426 to 27 (1st Cir. 1994).
10             The Norris court stated that such evidence satisfies
11      Nkansah's intent requirement because "failing to make a down
12      payment necessarily exposes a bank to a greater risk of loss."
13      Norris 2013 Westlaw 781038 at *2.  See also Barrett vs. United
14      States 663 F.3d 71 at 88 (2d Cir. 2011) ("where a borrower has
15      knowingly misstated his ability to pay back a loan, a trial
16      judge does not plainly err by omitting an intent to harm
17      instruction from a bank fraud charge."  Quoting United States
18      v. Chandler 98 F.3d at 711, 716 (2d Cir. 1996).
19             Furthermore a "intent to expose a bank to actual or
20      potential losses is not inconsistent with an honest belief that
21      no harm would come to the bank. "United States 320 Federal
22      Appendix 74, 76 (2d Cir. 2009).
23             Accordingly, even if a defendant "intended no harm to
24      [a bank] because he was going to fully pay back the loans," it
25      is a reasonable inference that the defendant "intended some

1    real and immediate harm or potential loss to the [the bank] in
2    the short term, which is sufficient to sustain his conviction
3    [for bank fraud]" United States v. Dupree 2012 Westlaw 5333946
4    at *25 (E.D.N.Y.  Oct. 26, 2012).
5             In sum, I do not believe that in order to accept the
6    defendant's guilty plea to bank fraud, it is necessary for him
7    to allocute that he had an intent to cause harm to Wachovia.
8             In light of footnote two in Nkansah and subsequent
9    decisions, I conclude that such an intent can be inferred where
10   defendant has provided false information, including false
11   information concerning a down payment in order to obtain a loan
12   from a bank.
13            Accordingly, my intention is to re-allocute the
14   defendant on count three, to confirm that there is an adequate
15   factual basis for his guilty plea to count three.  If his
16   admissions are consistent with what he told me back on July 31,
17   it is my intention to accept the plea.
18            Mr. Reyes, all of the information I provided to you on
19   July 31, 2013 concerning your rights and the consequences of a
20   guilty plea is still in effect.
21            Do you understand that?
22            THE DEFENDANT:  Yes.
23            THE COURT:  Is it still your intention to plead guilty
24   to count three, which charges you with bank fraud?
25            THE DEFENDANT:  Yes, sir.

1         THE COURT:  And then tell me, again, what makes you
2    believe that you are guilty of the crime of bank fraud.
3         THE DEFENDANT:  Because in 2006 I submitted a bank
4    loan to the Wachovia Bank with false information.  I told the
5    bank that I had $33,000 in my bank account.  And I actually
6    knew that that money was not mine.  I obtained the mortgage
7    from the bank, and I knew that if I didn't pay the loan back,
8    that the bank would suffer loss.
9         THE COURT:  All right.  Now, where was the Wachovia
10   Bank that you were dealing with?
11        THE DEFENDANT:  In Newark, New Jersey.
12        THE COURT:  Now, what's the government's position on
13   venue?
14        MR. DISKANT:  There is a waiver of venue with respect
15   to count three.
16        THE COURT:  All right.  And does the government
17   represent that deposits at Wachovia was were insured by the
18   Federal Deposit Insurance Corporation at the time of the
19   defendant's false bank loan application?
20        MR. DISKANT:  Yes, your Honor.
21        THE COURT:  Mr. Diskant do you request me to ask any
22   further questions of the defendant?
23        MR. DISKANT:  No, your Honor, thank you.
24        THE COURT:  All right, then.
25        Mr. Reyes, are you pleading guilty because you are

1    guilty, and are you pleading guilty voluntarily and of your own
2    free will?
3             THE DEFENDANT:  Yes, sir.
4             THE COURT:  Now, I'll ask you now how you plead to
5    count three; guilty or not guilty?
6             THE DEFENDANT:  Guilty.
7             THE COURT:  All right.  Because you acknowledge that
8    you're guilty as charged in count three, because I find that
9    you know your rights and you have waived them knowingly and
10   voluntarily, because I find your plea is entered knowingly and
11   voluntarily and is supported by an independent basis in fact
12   containing each of the essential elements of the offense, I
13   accept your guilty plea to count three and adjudge you guilty
14   of that offense.
15            All right.  I have already set a date for sentencing.
16            Is there anything else we need to do today?
17            MR. DISKANT:  No, your Honor.  Thank you.
18            MS. SHALLEY:  No, your Honor.  Thank you.
19            THE COURT:  Thank you.
20            (Adjourned)